## THE POUGHKEEPSIE GAS COMPANY, RESPONDENT, v. THE CITIZENS' GAS COMPANY, APPELLANT.

*Gas main, laid at request of owner — still continues to be the property of the gas company — a rival company cannot use it, even at the request of the owner of the house*

In 1873 the plaintiff, an incorporated gas company, at the request of one Eastman, who had erected a row of ten buildings on land belonging to him, laid a main in said land in the court yards in front of said houses, and connected each house therewith in order to supply the same with gas. The main was made larger than was necessary to supply the ten houses, in order that it might have sufficient capacity to furnish gas to another block of buildings proposed to be erected. It belonged to and was laid at the expense of the plaintiff, about three and a-half feet below the surface of the ground. Subsequently the houses were sold to various persons, to whom the plaintiff supplied gas by means of the said main. No mention of the gas main was made in any of the deeds.

In 1879, the defendant, a rival gas company, with the consent of the owners of each house, severed the said main from the general main laid by the plaintiff in the street in front of the houses, connected it with its own main laid in the said street, and thereafter supplied the houses with gas.

In an action brought by the plaintiff against the defendant for such wrongful act *held*, that it was entitled to a judgment requiring the defendant to reconnect the said main with the plaintiff's street main, and forever enjoining it from again interfering therewith.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

The plaintiff and defendant are gas companies, both duly organized under the general gas laws of this State, and located in the city of Poughkeepsie, and authorized by the common council to lay their gas-mains under the surface of the streets and avenues of said city.

In 1873, H. G. Eastman was the owner of certain lands in said city, on a part of which he made what is known as " Eastman Terrace," and erected thereon ten first-class dwelling-houses. Eastman wanted his block lighted with gas, and asked plaintiff's superintendent what the cost to him would be to lay a main directly in front of the houses, and was told, " that there would be no expense for the main ; that it belonged to the company ;" and he said : " go ahead."

The plaintiff laid a three-inch iron pipe from its main in South

avenue under and across the lawns in front of the houses; about three feet north of the stoops. It was larger than was needed to supply the block and was laid of that size in order to accommodate another block proposed to be erected. The length of the pipe was 238 feet, and it was laid three and a-half feet below the surface. From the front of the buildings to the "driveway" in front is forty feet.

After the pipe was laid the grounds were ornamented with flower-beds, walks and grass-plats, and it was not possible to remove it without breaking up the ground and destroying the appearance of the lawns. This pipe, if taken out, would not be worth the cost of removal.

Eastman conveyed all the property to Innis and Pelton, by deed, April 1, 1874, and they conveyed the ten houses and lots, by separate deeds, to the several purchasers, between May 11th and October 1, 1874. All of said deeds contain covenants of warranty and seizin, and neither of them contain any reservation or mention of any right or claim of the plaintiff to this pipe.

The plaintiff furnished gas to houses Nos. 2 and 4, for Eastman, before his sale; and to all the owners and occupants after his sale.

In pursuance of the written consent of the owner of each house, the defendant, on January 7, 1879, severed the pipe, within the curb-line, from the plaintiff's gas-main in South avenue, and connected it with the defendant's gas-main in the same avenue, and put its own meters in the houses, and thenceforth supplied them with its gas. It was the custom when changes were made from one company to the other to sever the connection at the curb. The severance was done in the best possible manner.

The plaintiff claimed to be the owner of this pipe, and brought this action to compel delivery of the same to the plaintiff.

The judgment directed the defendant to re-connect the pipe with plaintiff's main on Market street, and to deliver up the pipe to the plaintiff, and enjoined the defendant from again interfering with, or in any way molesting or controlling said pipe, and directed that plaintiff recover costs.

*H. A. Nelson,* for the appellant. The pipe was intended to be and became a permanent accession to the realty. (*Murdock* v.

*Gifford,* 18 N. Y., 28, 33; *Potter* v. *Cromwell,* 40 id., 287; *Van Ness* v. *Packard,* 2 Peters, 144; *Elmes* v. *Maw,* 3 East, 52; *Bulkley* v. *Bulkley,* 11 Barb., 54; *Miller* v. *Plumb,* 6 Cow., 666; *Pool's Case,* 1 Salk., 368; *Richardson* v. *Copeland,* 6 Gray, 536; *Sudbury* v. *Jones et al.,* 8 Cush., 184; *Murphy* v. *Marland,* 8 id., 575; *Faber* v. *Robinson,* 36 Barb., 484; *Powell* v. *McAshen,* 28 Missouri R., 70; *Providence Gas Co.* v. *Thurber,* 2 R. I. Rep., 22; *Voorhies* v. *McGinness,* 48 N. Y., 278, 284; *McRea* v. *Central N. Bk. of Troy,* 66 id., 489.) The several purchasers became the owners of so much of this pipe as lay in their soil, subject only to an easement in favor of each owner, in every other part of the pipe. (*Flint* v. *Bacon,* 13 Hun, 457; *Hand* v. *Griffith,* 84 How., 305; *Butterworth* v. *Crawford,* 46 N. Y., 349.)

*Thompson, Weeks & Lown,* for the respondent.

GILBERT, J.:

The trial court found that the pipe in question was laid at the request of Eastman, the owner of the premises over which the same ran, at the plaintiff's expense, and that it was understood and agreed between the plaintiff and Eastman that the pipe should belong to the plaintiff. These findings are sustained by the evidence. Indeed it is not disputed that the plaintiff owned the pipe at the time it was laid. The only purpose of it was to conduct a supply of gas to buildings erected upon Eastman's land, to be furnished by the plaintiff. The transaction amounted to a license from Eastman to the plaintiff to enter upon and use the land for the purposes mentioned. It is perfectly valid, although resting in parol. The statute of frauds does not apply to an executed parol license. (1 Wash. R. P., 399; *Mumford* v. *Whitney,* 15 Wend., 381; *Wolfe* v. *Frost,* 4 Sand. Ch., 77; *Babcock* v. *Utter,* 1 Keyes, 397.) The undisputed facts rebut the idea that the parties intended that the property of the plaintiff in the pipe should be divested by an annexation thereof to the freehold. No doubt the license mentioned could be revoked by Eastman, or by his grantees, and perhaps a conveyance by Eastman of the *locus in quo* would be *per se* a revocation. But the latter point was not suggested on the argument, nor does it appear that the convey-

ances put in evidence include the site of the pipe. Until revoked the license remains in force.

It does not appear that either Eastman or either of his grantees have at any time notified the plaintiff of a revocation of the license.

Nor did the employment of the defendant by some of East-man's grantees to supply gas to their houses operate as a revocation, or authorize the defendant to use the plaintiff's pipe. The defendant's interference with and use of the pipe was a simple invasion of the property of the plaintiff, and was therefore illegal. The judgment should be affirmed, with costs.

PRATT, J., concurred; BARNARD, P. J., not sitting.

Judgment affirmed, with costs.